CHARLES H. AUSTIN *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    March 25, 1895. — September 9, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Assumption of Risk — Evidence.*

If a brakeman on a freight train who in the course of his employment has had occasion to go by a gate-post nearly or quite every day for two years, which post is only one of many structures equally near to the track, is injured by striking the post, he cannot recover for his injuries in an action against the railroad company, as he must be held to have assumed the risk of injury whether he actually knew of the danger or not; and evidence of the slight sagging of the post towards the track is immaterial, if it is not shown to have had anything to do with the injury.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ on December 12, 1892, by striking against a gate post maintained by the defendant at the side of its line. The declaration contained four counts, the first and second at common law, the third under St. 1887, c. 270, § 1, cl. 1, and the fourth under cl. 2 of the same statute and section. Trial in the Superior Court, before *Sherman*, J., who, at the close of the evidence, at the request of the defendant, directed a verdict for the defendant, and, at the plaintiff's request, reported the case for the determination of this court, in substance as follows.

The plaintiff was at the time of the accident acting as a brakeman upon a freight train running from Boston to Rockport. For two years or more he had been employed upon this train and had had occasion to go by the post nearly or quite every day. The post was about four feet distant from the track,

and was one of many structures equally near or nearer to it. These structures were posts supporting bridges over the tracks, posts forming portions of drawbridges, telltale posts, telegraph poles, signal and semaphore posts, switch stands, standpipes, walls of passenger stations, abutments of bridges, and similar objects, forty-two in number. There was evidence that the post had sagged slightly towards the track, but the sagging was not shown to have had anything to do with the injury to the plaintiff.

A portion of the plaintiff's testimony was as follows:

"The morning of the accident my train left the Somerville yard at 3.55 A. M. It was very dark, quite dark. . . . The train was proceeding some fifteen to eighteen miles an hour, — a good fifteen miles an hour, and I should think more, when we reached the Saugus River drawbridge. I was at the time setting the brake and trying to hold the train so as to make the stop below the drawbridge before we set them off at the West Lynn siding. I was setting the brake inside the caboose. It did not seem to check the train; it slipped on the rails, and I knew I would have to go up on top and set more brakes. I eased up on the brake, and after we got through the draw I started to go out on top; took my lantern on my arm, opened the door, put the right foot on the ladder on the right hand, put the left on the outside rim of the threshold, leaned all my weight on the right leg and pulled the door, and just as the door slammed I felt a blow right here, right about here (indicating upon a door back of the witness stand and upon his hip). I came out, put my right foot on the round of the ladder, the lantern on my arm, and leaned over, — this foot on the outside threshold of the door, — and just as the door came together — the door snapped together that way — I felt a bang behind. My lantern was lighted and on my arm. As I was going, and as I stood just about to go up the ladder, the lantern was on the arm that was holding to the round of the ladder. As I went out I looked ahead up to the signal mark to see the balls that were on the signal mark. You are supposed to look for these. You have no right to go by them until you get your signals. The light of my lantern as I stood there, about to climb, threw ahead, I should think about six feet or so, at a rough guess — as near as I can get it. I remember being struck

here (indicating on his body). I remember nothing else until I came to myself in the hospital, two weeks and two or three days afterwards. . . . I never noticed the gate except when it was across the track when we were coming towards Boston. I don't remember of ever noticing, of ever looking at the gate anything more than when it was across the track. I was never, during the course of my employment on this or any other road, struck by an object on the side of the car upon which I was working. And I do not remember that in the course of my employment I had ever heard of a brakeman or other person in the employ of the road being struck by an object on the side of the road."

*S. C. Darling,* for the plaintiff.

*S. Lincoln,* for the defendant.

MORTON, J. We do not see how this case can be distinguished from *Lovejoy* v. *Boston & Lowell Railroad,* 125 Mass. 79, *Thain* v. *Old Colony Railroad,* 161 Mass. 353, and *Goodes* v. *Boston & Albany Railroad,* 162 Mass. 287. The plaintiff had been employed as a freight brakeman on the Rockport freight for two years or more, and had had occasion to go by this post nearly or quite every day. The post was only one of many structures as near to the track as it was, and the plaintiff must be held to have taken the risk of injury from its proximity, whether he actually knew of the danger or not. The slight sagging of the post towards the track, of which there was evidence, is not shown to have had anything to do with the injury to the plaintiff.

*Judgment for the defendant.*