*Municipal Court of the City of Boston*

No. 405643

**MARY HIBBARD**

v.

**FRANK ROCCHI**

(November 18 - December 16, 1955)

*Adlow, C. J.* Action of contract or tort [tried before *Roberts, J.*] to recover for misrepresentation in the sale of a house. There was evidence that prior to the purchase of the property from the defendants, Frank and Mary Rocchi, the plaintiff was shown the premises at various times by each of the defendants and that both defendants in response to questions from her as to whether the property was approved for two-family occupancy by the Building Department of the City of Boston, was assured by them that it was. In addition to providing the affirmitive answer set forth above, she was assured by the defendants, during the negotiations preceding the sale, that: (1) the house had been remodeled from a single into a two-apartment house; (2) that the new apartment was registered with the Rent Office and, (3) that the Building Department of the City of Boston had approved of the change and that everything was legal so far as the house was concerned.

Thereafter the plaintiff purchased the house, moved

into the first floor apartment, and rented the second floor. Some months later the plaintiff was notified by a representative of the Building Department of the City of Boston that she was maintaining the house in violation of the Building Code in that there was not sufficient egress in the house for two families, and that one family would have to vacate the premises unless additional egress were provided.

There was evidence that the seller had changed the house from a single to a two-family dwelling in violation of the Building Code and knew that he had violated the Code, the Egress Division of the Building Department of the City of Boston having previously advised him of the violation. In this action, based on the alleged deceit by the sellers, there was a finding for the plaintiff, and the sellers being aggrieved by the rulings of the court and the finding for the buyer, bring this report.

The finding of the court was warranted by the evidence. There is no dispute with respect to the facts. It is urged on behalf of the defendants that the purchase was made by the plaintiff after a most minute and careful inspection of the premises and that there was nothing to prevent the discovery by the buyer of all the facts on which she now bases her right to recover. We cannot agree.

When the seller assured the buyer that the house was legally authorized for two-family occupancy, the inference was warranted that there had been compliance with all the pre-requisites to a valid alteration of the premises. *Windrom v. French,* 151 Mass. 547, 551; *Alton v. First National Bank of Webster,* 157 Mass. 341 at 343. Actually, nothing had been done to authorize the alteration, either by way of getting a permit to do the necessary work, or to make the premises legally suitable for two-family occupancy. Of these facts the defendants were aware.

While the parties have argued the issues on the basis that the misrepresentations were innocently made

by the defendants, the fact is that they had conscious knowledge of their falsity.

It is urged by the defendants that even if these representations were made by them they are without legal consequence, and come within the scope of what is popularly referred to as "seller's talk". *C. v. Quinn*, 222 Mass. 504. Whatever vogue this ill-defined and little understood concept of "permissive fraud" has ever enjoyed, its proportions have been considerably reduced in recent years. A study of the decisions will reveal that the immunities conferred on "seller's talk" have been greatly exaggerated. Courts have always distinguished between statements with respect to future hopes and anticipations and representations concerning existing facts. Over 250 years ago in a case involving a misrepresentation by a seller with respect to the rent realized from a property, Lord Holt stated: "If a vendor gives a particular of rents and the vendee says he will trust him and inquires no further but relies on his particular; then if the particular be false an action will lie." *Lysney v. Selby*, 2 Ld. Raymond (Eng.) 1118.

Some early decisions have denied recovery in cases where persons have made statements of their own knowledge, although they did not actually know them to be true. *Waycraft v. Creasy*, 2 East (Eng.) 92. (Chief Justice Kenyon dissenting.) However, the great weight of authority is the other way. *Ekin v. Tresham*, 1 Levinz (Eng.) 102; *Ward v. Winman*, 17 Wend. (NY) 193; *Weeks v. Currier*, 172 Mass. 52; *Bates v. Cashman*, 230 Mass. 67; *Chatham Furnace Co. v. Moffatt*, 147 Mass. 403.

Whatever the earlier doctrine may have been, it is now clearly established in this Commonwealth that one who has been induced to enter into a contract in reliance upon a false though innocent representation of a material fact, made of the party's own knowledge, and stated as a fact and not as a matter of opinion, is entitled to recover for damages suffered

by him because of the deception. *Restatement*: Torts — §540; *Kabatchnick v. Hanover Elm Building Corp.*, 328 Mass. 341, 344; *York v. Taylor*, 1955 A.S. 257, 259.

It is unfortunate that the language in the *Kabatchnick* case suggests that the rule in the *Quinn* case was changed. The facts in the two cases bear little resemblance to one another. In the *Quinn* case the alleged victim of the fraud was a prospective purchaser of the property who was in no other manner connected with the premises. If the seller indulged in some "puffing" or exaggeration, the conditions under which the parties faced one another reduced the dangers from imposition and fraud to a minimum. In the *Kabatchnick* case the defrauded party was a businessman who had operated a store on the premises for many years. His lease had only one year to run. In his opinion his entire livelihood depended on his remaining on these premises. When he was told by the landlord that another person had offered a much higher rental for a long lease, he was not free in an economic sense to accept or reject the deal. Nor was there any immediate opportunity for ascertaining the truth or falsehood of the representation. The imposition practised on him by the landlord was real; the fraud was damaging. His position was hardly on a par with that of the purchaser in the *Quinn* case who could have walked away without any loss whatever. Viewed in this light the *Kabatchnick* decision does not involve a departure from the rule in the *Quinn* case.

As one considers the many decisions which have either allowed or denied recovery in cases based on fraud and misrepresentation it becomes more and more apparent that the problem poses a mixed question of law and fact. The dispute between Lord Kenyon and his colleagues in *Waycraft v. Creasy*, supra, was not so much a controversy over a legal principle as it was over the moral standard by which the conduct

of the defendant was to be judged. In the days when the market place was teeming with fraud, the courts could well say that a buyer in the mere exercise of common sense had a duty of extreme care and circumspection. Fortunately, the moral level on which business is transacted has now been raised considerably. Today honesty is the rule; dishonesty the exception. Business proceeds on the assumption that representations made in the market place are not only honestly believed, but that they are true. The buyer does not have to accept the representations of the seller at his peril.

*Report dismissed.*

Weinberg and Rosen, for the plaintiff.

Frank Fralli, for the defendant.